UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
DR. LEONARD MORSE,

                        Plaintiff,                      **07 CV 4793 (CBA)(RML)**

        -against-


ELIOT SPITZER, Individually, Special Assistant Attorney
General JOHN FUSTO, Individually, Senior Special
Investigator JOSE CASTILLO, Individually, and Senior
Special Auditor Investigator ROBERT H. FLYNN,

                        Defendants.
--------------------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR RECONSIDERATION OF THE COURT'S DISMISSAL
### OF PLAINTIFF'S MALICIOUS PROSECUTION CLAIM


Jon L. Norinsberg, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396

Table of Authorities                                                       Page

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Baez v. Jet Blue Airways, No. 09-Civ-596, 2009 U.S. Dist. LEXIS 67426
        (E.D.N.Y. July 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Babi-Ali v. City of New York, 979 F. Supp. 268 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . 1, 6, 10

Blake v. Race, 01 Civ. 6954, 2007 U.S. Dist. LEXIS 23092 (March 29, 2007) . . . . . . . . . . . 5, 7

Castro v. United States, 34 F.3d 106 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chimurenga v. City of New York, 45 F. Supp.2d 337 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . 5

Curry v. City of Syracuse, 316 F.23d 324 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12, 17

Henry v. City of New York, No. 02 Civ. 4824, 2003 U.S. Dist. LEXIS 15699
        (S.D.N.Y. September 5, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Janetka v. Dabe, 892 F.2d 187 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6

Jovanovic v. City New York, 04 Civ.8437, 2006 U.S.  Dist. LEXIS 59165
        (S.D.N.Y. Aug. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kirk v. Metropolitan Transit Authority, No. 99 Civ. 3787, 2001 U.S. Dist. LEXIS 2786
        (S.D.N.Y. April 5, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lierando-Phipps v. City of New York, 390 F. Supp. 372 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . 5

Marshall v. Sullivan, 105 F. 3d 47 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

Manganiello v. Agostini, No. 07 Civ. 3644, 2008 U.S. Dist. LEXIS 99181
        (S.D.N.Y. December 9, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

McClellan v. City of New York, 2006 U.S. App. LEXIS 4531
        (2d Cir. Feb. 24, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 11

Mickle v. Morin, 297 F.3d 114 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Nibbs v. City of New York, No. Civ. 3799, 2011 U.S. Dist. LEXIS 87213
(S.D.N.Y. Aug. 4, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Oliveira v. Mayer, 23F.3d 642 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 15

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . 5, 7, 10

Richardson v. City of New York, 02Civ.3651, 2006 U.S. Dist. LEXIS 69577
(S.D.N.Y. September 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Sutton v. Duguid, 05 Civ. 1215, 2007 U.S. Dist. LEXIS 35853
(S.D.N.Y. April 5, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Vt. Teddy Bear Co v. 1-800-BEARGRAM Co., 373 F.3d 241 (2d Cir. 2004) . . . . . . . . . . . . 14

Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     DEFENDANT FLYNN IS NOT ENTITLED TO SUMMARY JUDGMENT ON
       PLAINTIFF'S MALICIOUS PROSECUTION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     The Second Circuit Has Expressly Recognized the Viability of Such A
              Claim When Based on a Fabricated Statement by a Police Officer . . . . . . . . . . . 4

       B.     The Defense of Probable Cause Is Not Available To Officers Who Fabricate
              Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       C.     The Defense of Qualified Immunity Is Not Available To Defendant Flynn
              Because Of  The Allegations  of Perjury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       D.     The Defense of Qualified Immunity Is Not Available To Defendant Flynn
              Because There Is A Clear Factual Dispute As To Whether Or Not Dr. Morse Ever
              Made The Inculpatory Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    DEFENDANT CASTILLO  IS NOT ENTITLED TO SUMMARY JUDGMENT ON
       PLAINTIFF'S MALICIOUS PROSECUTION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . 9

       A.     The Defense of Qualified Immunity Is Not Available to Castillo Based Upon The
              Allegations of Falsified Evidence And Perjury . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       B.     The Defense of Qualified Immunity Is Not Available to Castillo Because There is
              A Sharp Factual Dispute As To Whether Or Not Castillo Disregarded $100,000
              in Checks Paid By Dr. Morse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              i.     This Factual  Dispute is Material, Since Castillo's Failure To Take Into
                     Account the $100,000 in Checks  Had A Drastic  Impact On  His Fraud
                     Calculations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       C.     Under Second Circuit Case Law,  Each Criminal Charge Must Be Analyzed
              Separately For Purposes of A Malicious Prosecution Claim . . . . . . . . . . . . . . . 13

              i.     As a Matter of Law, Castillo Lacked Probable Cause  To Charge Dr.
                     Morse With  Grand Larceny In The First Degree . . . . . . . . . . . . . . . . . . . 13

ii.    Defendants' Wildly Fluctuating Fraud Calculations Do Not Support The
       Charge of  Grand Larceny In The First Degree . . . . . . . . . . . . . . . . . . . . 14

iii.   Defendants' "Fallback" Position That There Was At Least *Some* Evidence
       of Overbilling Is Legally Insufficient To Defeat Plaintiff's Malicious
       Prosecution Claim on Grand Larceny in the First Degree . . . . . . . . . . . 15

D.     The Parties Have Offered Sharply Conflicting Evidence Regarding Castillo's
       Fraud Calculations, Thus Precluding Summary Judgment . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## PRELIMINARY STATEMENT

Plaintiff Leonard Morse respectfully submits this Memorandum of Law in support of his motion for reconsideration of the Court's dismissal of his malicious prosecution claim.[1] It is respectfully submitted that plaintiff's malicious prosecution claim against Robert Flynn should not have been dismissed because: 1) the Second Circuit has expressly held that such a claim, when based on a fabricated statement by a police officer, states a viable malicious prosecution claim. See Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003); 2) the defense of qualified immunity is not available where, as here, plaintiff has alleged that defendant Flynn lied to the Grand Jury. See Marshall v. Sullivan, 105 F. 3d 47, 53 (2d Cir. 1996) ("qualified immunity does not protect those who knowingly violate the  law."); 3) the defense of qualified immunity is not available where, as here, there is a clear factual dispute as to whether or not Dr. Morse ever made the statement attributed to him by defendant Flynn. See Curry v. City of Syracuse, 316 F.23d 324, 334-35 (2d Cir. 2003) ("summary judgment based either on the merits or on qualified immunity requires that *no* dispute about material factual issues remain.") (emphasis supplied).

With respect to defendant Castillo, the defense of qualified immunity is likewise unavailable due to the allegations of fabricated evidence and perjury. See Marshall, supra. Specifically,  the Court has already found that "a reasonable jury could find that Fusto and Castillo fabricated evidence that was used to secure the grand jury indictment in this case." (Memorandum and Order ("Order") at 10).  In light of this finding, the defense of qualified immunity is not available to Mr. Castillo. See Babi-Ali v. City of New York, 979 F. Supp. 268, 275 (S.D.N.Y. 1997) ("[T]he right of qualified

---

[1]For the reasons set forth the Court's Order (16, n.3),  plaintiff does not ask the Court to reconsider its ruling dismissing plaintiff's false arrest claim.

immunity does not protect those who knowingly violate the law.  Plaintiff has alleged knowing falsification and perjury. Accepting such allegations as true requires this Court to find that the defense of qualified immunity will not protect [defendant] from liability.") (internal citations omitted).

Apart from the allegations of misconduct, there is a sharp factual dispute as to whether or not Castillo ignored a *full year of payments* made by Dr. Morse.[2]   Mr. Castillo has denied receiving any of these checks, claiming instead that Dr. Morse produced only 120 checks in the amount of $203,762 (Castillo  Decl.,¶¶ 7, 17). Dr. Morse, however,  has testified that this is  "absolutely and categorically false," and that the *actual* amount of checks that Dr. Morse paid to the labs during this same period was $318,811.84 ( Morse Decl., ¶¶ 35-41; Morse Dep. at 66).   Thus, there is sharp factual dispute regarding the amount in checks paid by Dr. Morse, and this factual dispute precludes summary judgment on the basis of qualified immunity. See McClellan v. City of New York, 2006 U.S. App. LEXIS 4531 at *31 (2d Cir. Feb. 24, 2006) ("The District Court generally failed to heed the rule that resolution of genuine factual issues is inappropriate on motions of summary judgment based on qualified immunity.")

Apart from the above considerations, the Second Circuit has emphasized "the need to separately analyze the charges claimed to have been maliciously prosecuted." Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991).  Once this is done, it is clear that Castillo did *not* have sufficient grounds to charge Dr. Morse with  Grand Larceny in the First Degree.  To the contrary, Mr. Castillo

---

[2] These payments, amounting to over $100,000, would have allowed Dr. Morse to receive $600,000 (or more) in Medicaid payments, thus drastically altering Castillo's fraud calculations. (Castillo Dep. at 204; Rosen Decl, ¶¶ 43-45; Morse Decl. ¶¶ 46-48; Salzberg Report at 14, n.20)

has now *conceded* that the actual fraud amount might have been much lower than $1,000,000.00. <u>See</u> Report and Recommendation ("Report") at 15, n.17 ("As Castillo *concedes*, that analysis would *no*t have supported a charge of Grand Larceny in the First Degree," since this  charge "requires that the stolen property's value *exceed one million dollars*." (<u>id.</u>. at 3, n3) (citing N.Y. Penal Law §155.42) (emphasis supplied). Indeed, just *two months* after the criminal trial ended, Castillo claimed that the amount of fraud was actually <u>$275,026.00</u> (Castillo Dep. at 220-21; Payne Dep. at 37, 39; Ex. I).  Most recently,  Castillo claimed that the fraud amount might, in fact, have been as low as <u>$160, 592.00</u>. (Castillo Decl., at ¶ 6) – a difference of *almost $1,000,000* from his original fraud calculations.  Since *none* of these numbers is even remotely close to the statutorily required amount of $1,000,000, Castillo's motion for summary judgment on plaintiff's malicious prosecution claim fails as a matter of law.

*          *          *          *

-3-

<u>ARGUMENT</u>

I. **DEFENDANT FLYNN IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM.**

    A. **The Second Circuit Has Expressly Recognized the Viability of Such A Claim When Based on a Fabricated Statement by a Police Officer.**

In <u>Jocks v. Tavernier</u>, 316 F.3d 128 (2d Cir. 2003), the Second Circuit addressed the issue of whether or not a statement falsely attributed to plaintiff could form the basis of a malicious prosecution claim. The district court had found that it could not, finding instead that there was probable cause to support both plaintiff's arrest and prosecution. The Second Circuit upheld the district court's dismissal of plaintiff's false arrest claim, finding that there was probable cause to arrest plaintiff. However, the Second Circuit reversed the district court's dismissal of the malicious prosecution claim, holding that the fabricated statement was a "civil rights violation" which was actionable as a malicious prosecution claim, regardless of whether or not there was probable cause to arrest plaintiff:

> The trial court, in dismissing the malicious prosecution claim against [the defendant], rejected the argument that the fabrication of evidence is a civil rights violation. In so doing, the district court erred.... [Plaintiff] testified that the statement written by [defendant] was false... Although there was certainly not overwhelming evidence of falsification, a reasonable jury would be entitled to credit [plaintiff's] testimony and reject [defendant's]. Consequently, ... judgment as a matter of law should not have been granted in favor of [defendant].

<u>Jocks</u>, 316 F.3d at 134.

In this case, the Court has already ruled that a jury could "find that Flynn lied during the grand jury proceedings when he testified that Morse told him that he personally 'examines' and 'signs off' on 'all the charts' at the dental office." (Order at 10). Accordingly, under <u>Jocks</u>, plaintiff

-4-

has stated a viable malicious prosecution claim.  See Jocks, 316 F.3d at 138 (holding that "[t]he malicious prosecution claim was improperly dismissed", where plaintiff had alleged that the statement attributed to him "was false [and] had been edited to favor the police.").  See also Blake v. Race, 01 Civ. 6954, 2007 U.S. Dist. LEXIS 23092, *215 n. 19 (March 29, 2007) ("the Second Circuit [in Jocks] suggested that the fabrication of evidence allegation in Ricciuti was part of the malicious prosecution claim.")

**B.    The Defense of Probable Cause Is Not Available To Officers Who Fabricate Evidence.**

In light of Jocks, several district courts have held that the defense of probable causes cannot be raised to defeat a malicious prosecution claim when an officer fabricates evidence against the accused.  See, e.g., Richardson v. City of New York, 02Civ.3651, 2006 U.S. Dist. LEXIS 69577, * 21 (E.D.N.Y. September 27, 2006) (holding that Jocks "stands for the proposition that on a malicious prosecution claim, if it can be proved that a law-enforcement officer fabricated material evidence against a suspect and forwarded it to prosecutors, .... then not only is the presumption of probable cause overcome, but *the existence of probable cause based on non-fabricated evidence ceases to be a defense for the fabricator*.")(emphasis supplied); Manganiello v. Agostini, 07 Civ. 3644, 2008 U.S. Dist. LEXIS 99181, *19 (S.D.N.Y. December 9, 2008) ("where officers fabricate evidence, there is sufficient evidence of a lack of probable cause to support a malicious prosecution finding.").  See also Lierando-Phipps v. City of New York, 390 F. Supp. 372, 383 (S.D.N.Y. 2005) ("[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors."); Chimurenga v. City of New York, 45 F. Supp.2d 337, 343 (S.D.N.Y. 1999)("[w]here

a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution."). Accordingly, under both <u>Jocks</u> and other case law in this Circuit, plaintiff has stated a viable malicious prosecution claim against Flynn.[3]

### C.    The Defense of Qualified Immunity Is Not Available To Defendant Flynn Because Of The Allegations of Perjury.

As noted above, the Court has already ruled that a jury could find that defendant Flynn lied to the Grand Jury about Dr. Morse's statements.  <u>See</u> Order at 10 ("a jury could reasonably believe that Flynn lied in order to make it appear that Morse had intentionally submitted invoices that he had reviewed and knew to be false."); <u>id</u>. at 11 (a jury could conclude that Flynn "gave material false testimony at the grand jury proceedings.").  In light of such findings, the defense of qualified immunity is not available to Mr. Flynn.  <u>See</u> <u>Sutton v. Duguid</u>, 05 Civ. 1215, 2007 U.S. Dist. LEXIS 35853 * 38 (S.D.N.Y. April 5, 2001) ("[T]he Court must deny defendants' motion based on qualified immunity because, if plaintiff proves that Detective Duguid knowingly gave false testimony to the Grand Jury to secure the indictment, qualified immunity would not be available."); <u>Babi-Ali v. City of New York</u>, 979 F. Supp. 268, 275 (S.D.N.Y. 1997) ("[T]he right of qualified immunity does not protect those who knowingly violate the law.  Plaintiff has alleged knowing falsification and perjury.

_____

[3]While the allegations of perjury against Flynn negate the defense of probable cause for Flynn  – <u>see</u> <u>Richardson</u>, 2006 U.S. Dist. LEXIS 69577 at * 21 (probable cause "ceases to be a defense for the fabricator") – it should nonetheless be noted that: i) Flynn never saw any evidence that would support the charge of Grand Larceny in the First Degree  (Flynn Dep. at 223); ii) Flynn never saw any evidence that Dr. Morse stole over a million dollars from Medicaid. (<u>Id</u>. at 222-23); iii) Flynn never saw any evidence that Dr. Morse had submitted false filings. (<u>Id</u>. at 223); and iv) ( Flynn never saw any evidence that would support the counts for false filings. (<u>Id</u>. at 223). Thus, apart from the fabricated statement, defendant Flynn did *not* have probable cause to prosecute Dr. Morse for the charges that were brought against him.

Accepting such allegations as true requires this Court to find that the defense of qualified immunity

will not protect [defendant] from liability.") (internal citations omitted).

Indeed, the Second Circuit has expressly held that an allegation of fabricated evidence is

sufficient to preclude summary judgment based on qualified immunity, *regardless* of whether or not

there was probable cause to arrest:

> Each of the defendants insists that so long as there was probable
> cause for [plaintiff's] arrest – independent of the allegedly fabricated
> evidence – the fabrication of evidence is legally irrelevant.   In
> essence, they argue that as long as the arrest complied with the Fourth
> Amendment, the [plaintiffs] can have no claim for post-arrest
> fabrication of evidence against them.   This argument – an
> ill-conceived attempt to erect a legal barricade to shield police
> officials from liability –  is built on the most fragile of foundations;
> it is based on an incorrect analysis of the law and at the same time
> betrays a grave misunderstanding of those responsibilities which the
> police must have toward the citizenry in an open and free society.  *No
> arrest, no matter how lawful or objectively reasonable, gives an
> arresting officer or his fellow officers license to deliberately
> manufacture false evidence against an arrestee.*

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129-30 (2d Cir. 1997) (reversing district court grant

of summary judgment on qualified immunity grounds)(emphasis supplied). See also  Blake v. Race,

01 Civ. 6954, 2007 U.S. Dist. LEXIS 23092, * 214 (March 29, 2007) (plaintiff "has created a

material issue of fact as to whether the defendants participated in the fabrication of evidence to

establish probable cause to arrest and prosecute [him].... [and such a claim] precludes summary

judgment on the issue of qualified immunity. In particular, if those facts are proven, this Court

cannot conclude that reasonable officers would disagree on the constitutionality of such conduct.");

Henry v. City of New York, No. 02 Civ. 4824, 2003 U.S. Dist. LEXIS 15699, *12 (S.D.N.Y.

September 5, 2003)("If plaintiff's deprivation of liberty was the result of planted evidence, this was

a clearly defined constitutional right at the time of Plaintiff's arrest, and qualified immunity is not

available to the officers") (citing Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000)).

> **D.    The Defense of Qualified Immunity Is Not Available To Defendant Flynn Because There Is A Sharp Factual Dispute As To Whether Or Not Dr. Morse Ever Made The Inculpatory Statement.**

The Second Circuit has repeatedly held that summary judgment may not be granted on

qualified immunity grounds where there are genuine factual issues in dispute.  See, e.g., McClellan

v. City of New York, 2006 U.S. App. LEXIS 4531 at *31 (2d Cir. Feb. 24, 2006)("The District Court

generally failed to heed the rule that resolution of genuine factual issues is inappropriate on motions

of summary judgment based on qualified immunity."); Curry v. City of Syracuse, 316 F.23d 324,

334-35 (2d Cir. 2003) (reversing summary judgment on qualified immunity grounds "because

summary judgment based either on the merits or on qualified immunity requires that no dispute

about material factual issues remain"). See also Mickle v. Morin, 297 F.3d 114, 122 (2d Cir.

2002)("Where the circumstances are in dispute, and contrasting accounts present factual issues as

to the degree of force actually employed and its reasonableness, a defendant is not entitled to

judgment as a matter of law on a defense of qualified immunity"); Lennon v. Miller, 66 F.3d 416,

420 (2d Cir. 1995) ("disputes over reasonableness are usually fact questions for juries").

In this case, there is a sharp factual dispute as to whether or not Dr. Morse made the

statements attributed to him by defendant Flynn, i.e., that Dr. Morse personally  "examines" and

"signs off" on "all the charts" at the dental office.  (G.J. Tr. Mar. 9, 2006 at 9).  As this Court has

noted, "Morse unequivocally denies making such a statement or anything close to such a statement."

(Order at 10) (citing Morse Decl. ¶78).  Further, "defendants concede in their objections to the R &

R that there may be a dispute concerning what Morse told Flynn". (Order at 10; Def. Objections at

-8-

12). Lastly, defendant Flynn "admitted that he never specifically asked Morse whether, before he submitted claims to Medicaid, he reviewed his employee's (Dr. Ketover) bills or patient charts." (Order at 10) (citing Flynn Dep. at 35-6).

Under such circumstances, there is a clear factual dispute as to whether or not Dr. Morse ever made the statement attributed to him by defendant Flynn. Accordingly, the defense of qualified immunity is not available to defendant Flynn. See Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) (the defense of qualified immunity is available "*only* in those cases where the facts concerning the availability of the defense are *undisputed*; otherwise, jury consideration is normally required.") (emphasis supplied); Kirk v. Metropolitan Transit Authority, No. 99 Civ. 3787, 2001 U.S. Dist. LEXIS 2786, *21 (S.D.N.Y. April 5, 2001)("As factual questions must not be resolved in a summary judgment motion, the question of qualified immunity is a triable issue that must be left for the jury to answer."). Accordingly, defendant Flynn is not entitled to summary judgment based on qualified immunity.

## II. DEFENDANT CASTILLO IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM.

### A. The Defense of Qualified Immunity Is Not Available to Castillo Based Upon The Allegations of Falsified Evidence And Perjury.

As noted above, the defense of qualified immunity is not available where there are allegations of falsified evidence and perjury. See Marshall v. Sullivan, 105 F. 3d 47, 53 (2d Cir. 1996) ("qualified immunity does not protect those who knowingly violate the law."). Here, the Court has already found that there is sufficient evidence in the record for a jury to conclude that defendant Castillo falsified evidence before the Grand Jury. See Order at 7 ("Morse has presented evidence sufficient to raise a genuine issue of fact concerning whether Fusto and Castillo intentionally

-9-

fabricated and/or altered billing summaries for use before the grand jury ...."); id. at 10 ("a reasonable jury could find that Fusto and Castillo fabricated evidence that was used to secure the grand jury indictment in this case, namely Grand Jury Exhibit 7 and other billing summaries").

In light of these findings, Castillo is *not* entitled to qualified immunity on plaintiff's malicious prosecution claim.  See Babi-Ali v. City of New York, 979 F. Supp. 268, 275 (S.D.N.Y. 1997) ("[T]he right of qualified immunity does not protect those who knowingly violate the law. Plaintiff has alleged knowing falsification and perjury.  Accepting such allegations as true requires this Court to find that the defense of qualified immunity will not protect [defendant] from liability.") (internal citations omitted).  See also Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129-30 (2d Cir. 1997) (reversing dismissal based on qualified immunity where there was an allegation of manufactured evidence).  Accordingly, plaintiff has stated a viable malicious prosecution claim against defendant Castillo.[4]

---

[4]While plaintiff's malicious prosecution claim is based on the same fabricated evidence which gives rise to his fair trial claim, it is well-established that a party may bring *both* a malicious prosecution claim and a fair trial claim in the same action.  See  Nibbs v. City of New York, No. Civ. 3799, 2011 U.S. Dist. LEXIS 87213, *3-4 (S.D.N.Y. Aug. 4, 2011) ("By allowing the plaintiffs in Ricciuti to bring their fair trial claim in addition to a claim for malicious prosecution, the Second Circuit established that the two types of claims may co-exist in a single action."); Baez v. Jet Blue Airways, No. 09-Civ-596, 2009 U.S. Dist. LEXIS 67426, at * 35 (fn. 18) (E.D.N.Y. July 29, 2009)("district courts within the Second Circuit have treated fair trial and malicious prosecution as separate claims for purposes of summary judgment or 12(b)(6) motions");  Jovanovic v. City New York, 04 Civ.8437, 2006 U.S.  Dist. LEXIS 59165, * 37 (S.D.N.Y. Aug. 2006)( "Plaintiff may legitimately bring both [a fair trial claim and a malicious prosecution claim]" based upon the same fabricated evidence).

**B.    The Defense of Qualified Immunity Is Not Available to Castillo Because There is A Sharp Factual Dispute As To Whether Or Not Castillo Disregarded $100,000 in Checks Paid By Dr. Morse.**

As noted above, the Second Circuit has repeatedly held that summary judgment may not be granted on the basis of qualified immunity where there are genuine factual disputes to be resolved. See McClellan, supra.; Curry, supra. In this case, there is a clear factual dispute as to whether or not Castillo *disregarded over $100,000* in checks paid by Dr. Morse to the labs during the audit period. In his Declaration, Mr. Castillo asserted that Dr. Morse produced only 120 checks in the amount of $203,762, representing the total amount of money that Dr. Morse paid to the labs from 2000-2002. (Castillo Decl.,¶¶ 7, 17). However, according to Dr. Morse, this claim is "absolutely and categorically false," as the *actual* amount of checks that Dr. Morse paid to the labs during this same period was $318,811.84 ( Morse Decl., ¶¶ 35-41; Morse Dep. at 66).[5]Thus, there is a clear factual dispute as to the amount of checks paid by Dr. Morse to the labs during the audit period – a dispute which defendants implicitly acknowledged during oral argument:

> The checks are an interesting question. As we pointed out, there *may* or may not *be a factual dispute as to what checks were provided* earlier to the prosecution ....

(Tr. at 58).[6]

_____

[5]While Mr. Castillo now denies being furnished with these checks, at his deposition, Mr. Castillo conceded that it was "possible" that Dr. Morse had, in fact, provided him with $318,811.84 in checks (Castillo Dep. at 196).

[6]The Court itself acknowledged that there was a "factual dispute" regarding the amount of checks paid by Dr. Morse to the labs during the audit period. (Tr. at 46).

-11-

      **i.**      **This Factual Dispute is Material, Since Castillo's Failure To Take Into Account the $100,000 in Checks Had A Drastic Impact On His Fraud Calculations.**

While defendants acknowledge that there "may be ... a factual dispute" regarding the amount of checks paid by Dr. Morse, they nonetheless contend that this is "not a material dispute." (Tr. at 58). However, as plaintiff's counsel pointed out during oral argument (Tr. at 31, 46-47) – and as further confirmed by multiple sources in the record – there is *not* a 1:1 ratio between lab payments and Medicaid reimbursement rates. Rather, a Medicaid provider can *lawfully* bill Medicaid $6.00 (or more) for every dollar paid to the labs, meaning that the $100,000 spent by Dr. Morse would entitle him to receive $600,000 (or more) from Medicaid. (Castillo Dep. at 204; Rosen Decl, ¶¶ 43-45; Morse Decl. ¶¶ 46-48; Salzberg Report at 14, n.20).

Since there is no set ratio on the amount that a provider can charge Medicaid (Castillo Dep. at 204) – and since the ratio could even be as high as 10:1 (id.) – the factual dispute over whether or not Castillo received over $100,000 in checks from Dr. Morse clearly *is* material to the Grand Larceny in the First Degree charge, as it would unquestionably have had a drastic impact on Castillo's fraud calculations.   Therefore, in light of this factual dispute, summary judgment cannot be granted to Castillo on the basis of qualified immunity. See Curry v. City of Syracuse, 316 F.23d 324, 334-35 (2d Cir. 2003) (reversing summary judgment on qualified immunity grounds "because summary judgment based either on the merits or on qualified immunity *requires that no dispute about material factual issues remain*")(emphasis supplied); Oliveira v. Mayer, 23F.3d 642, 649 (2d Cir. 1994) (the defense of qualified immunity is available "*only* in those cases where the facts concerning the availability of the defense are *undisputed*; otherwise, jury consideration is normally

-12-

required.") (emphasis supplied). [7]

    **C.**    **Under Second Circuit Case Law,  Each Criminal Charge Must Be Analyzed Separately For Purposes of A Malicious Prosecution Claim.**

        **i.**    **As a Matter of Law, Castillo Lacked Probable Cause  To Charge Dr. Morse With  Grand Larceny In The First Degree.**

Under the law of this Circuit,  the issue of probable cause must be analyzed separately for each criminal charge.  See Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991) (emphasizing "the need to separately analyze the charges claimed to have been maliciously prosecuted"); Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989) (same). Section 1983 Litigation, Claims and Defenses, 3ed. Volume 1(a), Martin A. Schwartz, John E. Kirklin, at 334 ("Where there are multiple criminal charges, the question of whether the police had probable cause to commence criminal proceedings should be analyzed separately for each charge.").

In Posr v. Doherty, supra., the district court had instructed the jury that if it found probable cause supporting *any* of the three charges brought  – disorderly conduct, resisting arrest and assault – then no liability for malicious prosecution could be found as to the other charges. In reversing the district court, and ordering a new trial, the Second Circuit stated as follows:

> If the rule were the one followed by the district court, an officer with probable cause  as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses.

---

[7]Qualified immunity also does not protect those who are "plainly incompetent."  See Weyant, 101 F.3d at 854 ("qualified immunity does not protect those who are plainly incompetent or those who knowingly violate the law."); Castro v. United States, 34 F.3d 106, 112 (2d Cir. 1994)(qualified immunity doctrine "does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent").  Thus, if  Castillo's failure to take into account the additional $100,000 in checks was due to mere *negligence* – as opposed to intentional misconduct –  he *still* would not be entitled to qualified immunity.

Posr, 944 F. 2d at 100.

Applying the above principles to this case, the charge of Grand Larceny in the First Degree must be analyzed separately from the false instrument charges. Once this is done, it becomes clear that Castillo cannot, *as a matter of law*, establish that he had probable cause to charge plaintiff with Grand Larceny in the First Degree.

ii. **Castillo's Wildly Fluctuating Fraud Calculations Do Not Support The Charge of Grand Larceny In The First Degree.**

Grand larceny in the First Degree is a "very rare charge." (Flynn Dep. at 215). This is so because the amount of fraud must be over $1,000,000 in order to establish Grand Larceny in the First Degree. (Id.) Yet, in this case, Mr. Castillo has now *conceded* that the actual fraud amount might have been much lower than $1,000,000.00. See Report and Recommendation ("Report") at 15, n.17 ("As Castillo *concedes*, that analysis would *not* have supported a charge of Grand Larceny in the First Degree," since this charge "requires that the stolen property's value *exceed one million dollars*." (id.. at 3, n3) (citing N.Y. Penal Law §155.42) (emphasis supplied). Indeed, just *two months* after the criminal trial ended, Castillo claimed that the amount of fraud was actually $275,026.00 (Castillo Dep. at 220-21; Payne Dep. at 37, 39; Ex. I).[8] Most recently, Mr. Castillo has claimed that the fraud amount might, in fact, have been as low as $160, 592.00. (Castillo Decl., at ¶ 6) – a difference of *almost $1,000,000* from his original fraud calculations.

Regardless of *which* number is accepted – whether it is $275,026, or $160,592 – *neither* of these numbers is even remotely close to the statutorily required amount of $1,000,000. Thus,

---

[8] When asked to explain *why* there was such an enormous discrepancy between what he had told the Grand Jury ($1,151,068.00) and what he was now claiming the amount of fraud to be ($275,026.00) – a difference of $876,042.00 – Mr. Castillo conceded that he had "***no explanation***" for this difference (Castillo Dep. at 223).

defendants have wholly failed to meet their burden of proving that they are entitled to judgment as a matter of law on the Grand Larceny in the First Degree charge. See Vt. Teddy Bear Co v. 1-800-BEARGRAM Co., 373 F.3d 241 (2d Cir. 2004) ("Under Rule 56 (c), in addition to showing the absence of a genuine issue of material fact, the moving party must show that he is entitled to *judgment as a matter of law*.") (emphasis supplied). Accordingly, defendants' motion for summary judgment on plaintiff's malicious prosecution claim for Grand Larceny in the First Degree must be denied.

> **iii.    Defendants' "Fallback" Position That There Was At Least *Some* Evidence of Overbilling Is Legally Insufficient To Defeat Plaintiff's Malicious Prosecution Claim on Grand Larceny in the First Degree.**

While defendants concede that "unquestionably there *were* mistakes in dollar calculations" (Fusto Decl., ¶ 33), defendants fail to realize that these "mistakes" preclude judgment as a matter of law on the Grand Larceny in the First Degree charge. Indeed, if the amount of fraud might have been as low as $160,592.00 – as Castillo now concedes (Castillo Decl.,¶ 6; Report at 15, n.17) – then *as a matter of law,* defendants have failed to meet the statutory requirement of $1,000,000 for Grand Larceny in the First Degree.[9]  Therefore, defendants' "fallback" position – namely, that "Dr. Morse still appeared to have-overbilled the Medicaid Program by at least several hundred thousand dollars" (Fusto Decl., ¶ 9) – actually *defeats* their motion for summary judgment on  plaintiff's malicious

---

[9]Stated differently, while Castillo's most recent fraud calculation of $160,592 might otherwise establish probable cause to arrest (*if* it were valid, which it is not, see generally Salzberg Report), it would *not* establish probable cause to prosecute for Grand Larceny in the First Degree.  See Posr, supra.; Janetka, supra. See also Holmes v. Village of Hoffman Estates, 511 F.3d 673, 682 (7th Cir. 2007)("As several of our sister Circuits have concluded, probable cause to believe an individual committed *one* crime – and even his conviction of that crime – does *not* foreclose a malicious prosecution claim for additionally prosecuting the individual on a *separate charge*.") (emphasis supplied) (citations omitted).

prosecution claim for the Grand Larceny in the First Degree Charge.[10]

**D.    The Parties Have Offered Sharply Conflicting Evidence Regarding Castillo's Fraud Calculations, Thus Precluding Summary Judgment.**

Apart from the factual dispute discussed above (Pt. II (B), supra.),Castillo's fraud calculations are *directly contradicted* by plaintiff's expert statistician, Alan Salzberg, Ph.D.  As Magistrate Judge Levy noted, "Dr. Salzberg concludes that Castillo's analysis does not establish "*any* statistical evidence of fraudulent billing by Dr. Morse," and in fact "does not document a *single* case of a Medicaid overpayment to Dr. Morse." (Report at 18) (emphasis in original).[11] Once a *proper* statistical analysis is done – and Castillo's erroneous assumptions are removed – it becomes clear that "there might have even been an *underpayment*" to Dr. Morse as high as $126,869 (Salzberg Report at 17,18-19; Appendix 1, fn. 27)(emphasis supplied). In other words, Medicaid could actually owe money to Dr. Morse, not the other way around. At the very least, however, there is sufficient evidence  to conclude that the alleged overpayment by Medicaid "very possibly could have been *zero*." (Id. at 18) (emphasis supplied).

---

[10]During oral argument, defense counsel made a similar claim, arguing that even if Castillo's analysis did not support a charge of Grand Larceny in the First Degree, "Morse might still ... have committed a serious crime...." (Tr. at 56). The Court, however, immediately rejected this argument, stating that there must be "probable cause to believe *the crime that he was charged with*, [and] *not* some other crime." (Id.)

[11]Further, "[a]ccording to the report of plaintiff's expert statistician, Alan Salzberg, Ph.D., defendant Castillo's assumptions were erroneous, his methodology was invalid, and his analysis riddled with errors." (Report at 17).  Among other things, Castillo**:** (1) "underestimate[d] valid payments by approximately 44% for Design Dental"; (2) "underestimate[d] payments ... by approximately 29% for Nu-Life"; (3) "further underestimate[d] valid payments from work at Design Dental by approximately 30%  by giving Dr. Morse 0 $ credit for 326 "illegible" Design Dental invoice items;" and (4) used a "technique for estimation" that is rife with "inaccuracies and flaws." (Salzberg Report at 4). For all of these reasons, Mr. Castillo's conclusions concerning overbilling are "inaccurate, unreliable and statistically invalid." (Id.).

Since the parties have presented directly conflicting evidence regarding Mr. Castillo's fraud calculations – and since a district court may not weigh evidence or assess credibility at the summary judgment stage – summary judgment must be denied on plaintiff's malicious prosecution claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not that of a judge."); Fischl v. Armitage, 128 F.3d 50,55 (2d Cir. 1997) ("[C]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.").[12] Accordingly, defendant Castillo is not entitled to summary judgment on plaintiff's malicious prosecution claim.[13]

_____

[12] Further, Mr. Castillo's credibility is directly at issue in this case because of his patent inability to explain *any* of his fraud calculations at his deposition. See, e.g., Castillo Dep. at 28 ("Q: Can you tell us sir, as you sit here right now, do you have *any* recollection of your calculations in this case? A: *I don't remember*."); id. at 222-3 ("Q: Can you think of any explanation as for why there would be a difference of $876,042 between your testimony before the Grand Jury and the figure represented on Plaintiff's Exhibit 1 at the bottom, $275,026? A: I have *no explanation* for that."); id. at 120 (Q: Now, for these five different procedures that we just covered, do you have any explanation as you sit here today as to why you were consistently using a lower price for all five procedures? A: *I don't have an explanation*."); id. at 196-7 (Q: When you were tabulating the checks that Dr. Morse paid to the labs, did you skip a year: *I don't remember.)*. See also id. at 55 – 62 (answering "I don't know" to 28 consecutive questions). In light of Mr. Castillo's complete and utter inability to explain *any* of his findings at his deposition, his sudden ability to do so in his Declaration is patently incredible, and  raises credibility issues which cannot be resolved on summary judgment.  Anderson, 477 U.S. at 255;  Fischl, 128 F.3d at 55.

[13] Apart from the factual disputes identified herein, plaintiff has set forth a multitude of *other* factual disputes regarding Castillo's fraud calculations.  See Pl. R. 56.1, Pt. IV (pp.23-36). Suffice it to say,  virtually *every* aspect of Castillo's analysis in this matter is in dispute. Under such circumstances, summary judgment may not be granted either on the merits *or* on grounds of qualified immunity.  See Curry v. City of Syracuse, 316 F.23d 324, 334-35 (2d Cir. 2003) ("summary judgment based either on the merits or on qualified immunity requires that *no* dispute about material factual issues remain.") (emphasis supplied).

**<u>CONCLUSION</u>**

For all of the foregoing reasons, it is respectfully submitted that the Court should  reinstate

plaintiff's malicious prosecution claim against both Flynn and Castillo, and that this Court should

grant such other and further relief as it deems just and proper.


Dated: New York, New York
        October 21, 2011

                                        Respectfully submitted,


                                        _____/s/_____
                                        Jon L. Norinsberg (JN 2133)
                                        Attorney for Plaintiff
                                        225 Broadway Suite 2700
                                        New York, N.Y. 10007
                                        (212) 791-5396