UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DR. LEONARD MORSE,

        Plaintiff,

  -against-

ELIOT SPITZER et al.,

        Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
07-CV-4793 (CBA) (RML)

AMON, Chief United States District Judge:

      Both parties have moved for reconsideration of this Court's September 30, 2011 Memorandum & Order granting in part and denying in part the defendants' motion for summary judgment on plaintiff Leonard Morse's claims brought pursuant to 42 U.S.C. § 1983 ("Summary Judgment Memorandum & Order"). The plaintiff asks the Court to reconsider its dismissal of his malicious prosecution claim. The defendants, in turn, ask the Court to reconsider its denial of summary judgment on Morse's fair trial claim, arguing for the first time that they are entitled to absolute immunity on this claim. Having reviewed the parties' motion papers, the Court adheres to its original rulings but offers the following analysis in further support of its Summary Judgment Memorandum & Order.

## I. BACKGROUND

      A detailed recitation of the facts and procedural posture of this case is set forth in the Court's Summary Judgment Memorandum & Order, <u>Morse v. Spitzer</u>, 2011 WL 4625996 (E.D.N.Y. 2011). The Court provides only a brief summary of the facts pertinent to the resolution of the two claims at issue in the parties' reconsideration motions.

      Morse asserted a claim for malicious prosecution against defendants Jose Castillo and Robert Flynn, both of whom were investigators in the Medicaid Fraud Control Unit ("MCFU") of the New York Attorney General's office at the time Morse was investigated and prosecuted

1

for Medicaid fraud. In support of this claim, Morse alleged that Castillo and Flynn lacked probable cause to initiate criminal proceedings against Morse and fabricated evidence in order to secure an indictment. Specifically, Morse alleged that (1) Flynn testified falsely before the grand jury, and (2) Castillo testified falsely before the grand jury and also manufactured documentary evidence that was presented to the grand jury. The Court concluded in its Summary Judgment Memorandum & Order that Morse had presented sufficient evidence based upon which a jury could find that Flynn testified falsely before the grand jury and that Castillo manufactured documentary evidence. However, the Court ultimately held that Castillo and Flynn were entitled to qualified immunity on the malicious prosecution claim because it was objectively reasonable for them to believe they had probable cause to indict Morse based on the undisputed facts available to them at the time criminal proceedings were initiated, independent of any false evidence.

Morse asserted a separate claim for denial of the right to a fair trial due to fabrication of evidence ("fair trial" or "evidence fabrication" claim) against Castillo and Special Assistant Attorney General John Fusto, who oversaw the investigation and prosecution of Morse's case. Morse did <u>not</u> bring a fair trial claim against Flynn. The fair trial claim was based on allegations that Castillo and Fusto manufactured false and misleading billing records to be used against Morse throughout the criminal proceedings, including before the grand jury. The Court concluded in its Summary Judgment Memorandum & Order that Morse had presented evidence sufficient to raise a genuine issue of fact as to whether Fusto and Castillo intentionally fabricated these documents. The Court therefore denied summary judgment on this claim.

## II. **PLAINTIFF'S MOTION FOR RECONSIDERATION**

Morse moves for reconsideration of the Court's dismissal of his malicious prosecution claim against Flynn and Castillo. Morse argues that the Court erred in (1) holding that probable cause is a defense to a malicious prosecution claim when there are allegations that a government

2

official fabricated evidence against the plaintiff, and (2) rejecting the argument that qualified immunity is never available to a government official on a claim for malicious prosecution if there are allegations that he fabricated evidence or lied to the grand jury.

**A.     Applicable law**

The arguments raised by Morse on reconsideration highlight an uncertainty among district courts in this Circuit about the nature and availability of certain § 1983 claims when a plaintiff alleges that government officials falsified evidence against him.  In the wake of the Second Circuit's decisions in Ricciuti v. New York City Transit Auth., 124 F.3d 123 (2d Cir. 1997), and Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003), district courts have expressed confusion about whether allegations of evidence fabrication can give rise to claims for malicious prosecution, denial of the right to a fair trial, or both, and when probable cause provides a complete defense to such claims.

In order to address the confusion over the interaction between these claims, it is necessary to examine the substantive roots of each cause of action and the constitutional right vindicated by each.  "'Section 1983 is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).  Although federal courts look to the common law of torts to determine the elements of a particular claim brought under § 1983, Carey v. Piphus, 435 U.S. 247, 257-58 (1978), "it is only the violation of the constitutional right that is actionable and compensable under § 1983."  Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 116 (2d Cir. 1995).  "'The validity of the claim must therefore be judged by reference to the specific constitutional standard which governs that right.'"  Id. (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)).  Because of this, the first step in evaluating any such claim "is to identify the specific constitutional right allegedly infringed."  Albright, 510 U.S. at 271 (citing Graham, 490 U.S. at 394).

A plaintiff who claims that a government official deprived him of his liberty by maliciously initiating criminal proceedings against him without probable cause invokes the protection of the Fourth Amendment. Albright, 510 U.S. at 274-75 (holding that the Fourth Amendment protects the right to be free from prosecution except on the basis of probable cause); Singer, 63 F.3d at 116 ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person."). For this reason, "[t]he absence of probable cause is an essential element to a claim for malicious prosecution." McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006).

In contrast, a claim that a government official denied an accused his right to a fair trial finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments, which secure the fundamental right to a fair trial in a criminal prosecution. See Holbrook v. Flynn, 475 U.S. 560, 567 (1986) (recognizing that the Sixth and Fourteenth Amendments secure the constitutional right to a fair trial); United States v. Ruiz, 536 U.S. 622 (2002) (same). When a government official manufactures false evidence against an accused, and the use of that fabricated evidence results in the deprivation of the accused's liberty, the government official infringes the accused's constitutional right to a fair trial in a manner that is redressable in a § 1983 action for damages. Zahrey v. Coffey, 221 F.3d 342, 348-49 (2d Cir. 2000); Ricciuti, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.").

The issue to be resolved in this case is the effect, if any, of the existence of probable cause to prosecute on the viability of malicious prosecution and fair trial claims when a plaintiff alleges that evidence was fabricated against him before the returning of the indictment by the grand jury. To answer this question, the Court first considers the Second Circuit's discussion of

4

these two claims in Ricciuti, a case in which the plaintiffs alleged that the defendant police officers knowingly fabricated and distributed a false confession to prosecutors. The defendants in Ricciuti argued that because the defendants had probable cause to arrest the plaintiffs, they had no claim for relief. 124 F.3d at 130. The court expressly rejected this argument and held that a government official violates an accused's constitutional right to a fair trial by fabricating material evidence and forwarding it to prosecutors, and the existence of probable cause for the arrest does not eliminate the viability of that claim. Id. The Court went on to separately analyze a malicious prosecution claim asserted by the plaintiffs that was based on allegations that the defendants lacked probable cause to charge the plaintiffs with second-degree assault. Id.

The analysis in Ricciuti unambiguously treated the plaintiffs' claims for malicious prosecution and denial of the right to a fair trial as two independent constitutional claims, with only the malicious prosecution claim being subject to a probable cause defense. Five years after the decision in Ricciuti, however, the waters became somewhat muddied by the decision of the Second Circuit in Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003). Citing to Ricciuti, the Court in Jocks permitted a malicious prosecution claim to go forward, despite finding that there was probable cause for the arrest, "because there was proof that the officers had later manufactured false evidence." 316 F.3d at 138.

District courts in this Circuit have expressed confusion in the aftermath of these two decisions as to whether the same allegation of evidence fabrication gives rise to two independent constitutional claims (one for malicious prosecution and one for denial of the right to a fair trial). See, e.g., Cruz v. Reilly, No. 08-cv-1245, 2009 WL 2567990, at *3 n. 2 (E.D.N.Y. Aug. 18, 2009); Baez v. JetBlue Airways Corp., No. 09-cv-596, 2009 WL 2447990, at *8 n. 18 (E.D.N.Y. Aug. 3, 2009); Schiller v. City of N.Y., No. 04-cv-7922, 2008 WL 200021, at *9 (S.D.N.Y. Jan. 23, 2008); Blake v. Race, 487 F. Supp. 2d 187, 214 n. 19 (E.D.N.Y. 2007); Richardson v. City of N.Y., No. 02-cv-3651, 2006 WL 2792768, at *7 (E.D.N.Y. Sept. 27, 2006). Some district

5

courts have interpreted Jocks as suggesting that Ricciuti did not actually establish that the denial of the right to a fair trial is an independent constitutional tort in such circumstances, but instead as holding that if a malicious prosecution claim is based on allegations of evidence fabrication by police officers, then "the existence of probable cause based on non-fabricated evidence ceases to be a defense for the fabricator." Richardson, 2006 WL 2792768, at *7 (interpreting Jocks and Ricciuti); see also Schiller, 2008 WL 200021, at *9 ("In [Jocks], the Second Circuit seemed to characterize Ricciuti as holding simply that the existence of probable cause at the time of the arrest could not vitiate liability for the post-arrest falsification of evidence); Manganiello v. Agostini, No. 07-cv-3644, 2008 WL 5159776, at * 6 (S.D.N.Y. Dec. 9, 2008) ("Where officers fabricate evidence, there is sufficient evidence of a lack of probable cause to support a malicious prosecution finding.") (citing Richardson, 2006 WL 2792768, at *5). Other district courts have allowed two "independent and separate" claims to proceed side by side in light of Ricciuti and Jocks, but have consistently questioned what if any difference exists between the claims. Jovanovic v. City of N.Y., No. 04-cv-8437, 2006 WL 2411541, at *13 (S.D.N.Y. Aug. 17, 2006); see Nibbs v. City of N.Y., 800 F. Supp. 2d 574, 575-76 (S.D.N.Y. 2011); Cruz, 2009 WL 2567990, at *3 n. 2; Taylor v. City of N.Y., No. 03-cv-6477, 2006 WL 1699606, at *4-5 (S.D.N.Y. June 21, 2006).

Morse urges this Court to follow those cases that read Jocks to hold that probable cause to prosecute ceases to be a defense to a malicious prosecution claim when there are allegations of evidence fabrication. The Court declines to adopt this interpretation of Ricciuti and Jocks. As discussed herein, civil damages for malicious prosecution are available under § 1983 specifically to redress violations of an individual's Fourth Amendment right to be free from a baseless prosecution. Because a Fourth Amendment violation only occurs when probable cause is lacking, the lack of probable cause to prosecute remains an essential element of a malicious prosecution claim. To hold otherwise would untether the malicious prosecution claim from its

6

Fourth Amendment roots. The Court does not believe that the Second Circuit intended to do so in Jocks.

Instead, the Court concludes that the Second Circuit established through Ricciuti and Zahrey that even where no Fourth Amendment violation occurred because there was probable cause to act (thereby rendering a malicious prosecution claim unavailable), an independent constitutional claim for the denial of the right to a fair trial can proceed under § 1983 based on allegations that a police officer fabricated evidence, if that fabrication caused a deprivation of the plaintiff's liberty. The Court reads Jocks as simply confirming the conclusion in Ricciuti that probable cause to arrest (or prosecute) is not a defense to such a claim. The Court harmonizes these cases to stand for the principle that a government official who falsifies evidence against an accused may be subject to liability under § 1983 for violating the accused's Fifth, Sixth and Fourteenth Amendment right to a fair trial, and the existence of probable cause is irrelevant to the resolution of this claim. Ricciuti, 124 F.3d at 129-30; Jocks, 316 F.3d at 138; see also Abreu v. City of N.Y., No. 04-CV-1721(JBW), 2006 WL 401651, at *6 (E.D.N.Y. Feb. 22, 2006) (citing Jocks for proposition that probable cause to arrest is not a defense to a claim for denial of the right to a fair trial). However, when a Fourth Amendment claim for malicious prosecution is alleged based on the same facts, the ultimate result will be that the existence of probable cause independent of the allegedly falsified evidence is a defense to that claim but not to the fair trial claim. See Cruz, 2009 WL 2567990, at *3; Alford v. City of N.Y., No. 11-cv-622, 2012 WL 947498, at *1 (E.D.N.Y. March 20, 2012) (declining to dismiss fair trial claim as duplicative of malicious prosecution and false arrest claims because "[e]ven if probable cause existed for plaintiff's arrests, defendants still could be liable for fabricating evidence against plaintiff").

The Court finds additional support for this reading of Ricciuti and Jocks in the Second Circuit's recent summary order in Jovanovic v. City of N.Y., No. 10-cv-4398, 2012 WL 2331171 (2d Cir. June 20, 2012). In Jovanovic, the district court had granted summary judgment to the

7

defendant on the plaintiff's claim for malicious prosecution because the defendant had probable cause to believe the plaintiff had committed the crimes charged. Id. at *6-8. The district court analyzed separately the plaintiff's claim that the same defendant deprived the plaintiff of his right to a fair trial by fabricating evidence against him, which it ultimately dismissed on the grounds that the alleged evidence fabrication did not result in a deprivation of the plaintiff's liberty. Id. at *10. The Second Circuit affirmed. It doing so, the Second Circuit also analyzed the claims separately, while emphasizing not only that "[a]n element of any malicious prosecution claim is the absence of probable cause," but also that "[p]robable cause is not a defense" to a fair trial claim. Id. at *2.[1]

Finally, the Court notes that the majority of § 1983 cases involving evidence fabrication arise from allegations that a police officer fabricated evidence and forwarded it to prosecutors *in order to provide probable cause* for an arrest or prosecution. See, e.g., Llerando-Phipps v. City of N.Y., 390 F. Supp. 2d 372, 376 (S.D.N.Y. 2005) (plaintiff alleged that police officers planted drugs on him after his arrest, which formed the basis of the prosecutor's decision to prosecute). In such cases, the question of whether the defendant fabricated evidence becomes synonymous with the question of whether genuine probable cause existed, and accordingly a plaintiff's malicious prosecution and fair trial claims would rise or fall together. Even in such cases, however, these remain distinct constitutional claims.

---

[1] Many of the cases relied upon by Morse for the proposition that "an arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors," are inapposite. Llerando-Phipps v. City of N.Y., 390 F. Supp. 2d 372, 376 (S.D.N.Y. 2005); Chimurenga v. City of N.Y., 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) (holding that a party plays an active role in initiating a prosecution when he provides false evidence to the prosecutor that might influence the decision to prosecute). These cases address when an arresting office, as compared to a prosecutor, can be said to have "initiated" criminal proceedings against an accused, an element of a malicious prosecution claim that is separate and distinct from the requirement that there be a lack of probable cause.

8

**B.     Application to Morse's claim for malicious prosecution**

1.     *Probable Cause*

Turning to the case at hand, the Court notes that the malicious prosecution claim asserted against Flynn and Castillo is the typical Fourth Amendment claim, namely that Flynn and Castillo initiated a baseless prosecution against Morse, including by presenting false evidence to the grand jury. For the reasons explained in the foregoing analysis, untainted probable cause remains a defense to such a claim, even in face of evidence suggesting that Flynn lied to the grand jury and Castillo manufactured some documentary evidence. Although such allegations may provide support for a distinct fair trial claim[2] they do not eliminate the defense of probable cause to Morse's malicious prosecution claim.

2.     *Qualified Immunity*

The second argument advanced by Morse on reconsideration is that qualified immunity is unavailable to Flynn and Castillo on Morse's claim for malicious prosecution in view of the Court's finding that a reasonable jury could conclude that Flynn lied to the grand jury and that Castillo fabricated documentary evidence. In so arguing, Morse relies on the basic proposition that "qualified immunity does not protect those who knowingly violate the law." Marshall v. Sullivan, 105 F.3d 47, 53 (2d Cir. 1996). This argument is not persuasive.

Ricciuti and its progeny undoubtedly establish that qualified immunity is unavailable *on a claim for denial of the right to a fair trial* where that claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find. 124 F.3d at 130; see Henry v. City of N.Y., No. 02-cv-4824, 2003 WL 22077469, at *4 (S.D.N.Y. Sept. 28,

---

[2] The Court notes that Morse has never asserted a claim against Flynn for the denial of the right to a fair trial based on the allegation that Flynn lied during his grand jury testimony. Even if Morse had asserted such a claim, Flynn would be entitled to absolute immunity under Briscoe v. LaHue, 460 U.S. 325 (1983), in which the Supreme Court expressly held that police officers are absolutely immune from civil liability based on allegations of false testimony at judicial proceedings. See San Filippo v. U.S. Trust Co. of N.Y., Inc., 737 F.2d 246, 254 (2d Cir. 1984), cert. denied 470 U.S. 1035 (1985) (extending Briscoe's to grand jury witnesses). Moreover, if the malicious prosecution claim against Flynn were based entirely on the allegation that he lied before the grand jury, that claim too would be barred on absolute immunity grounds.

9

2003) (applying <u>Zahrey</u> to hold that qualified immunity would be unavailable on fair trial claim if "deprivation of liberty was a result of the planted evidence"). However, these cases do not stand for the proposition that qualified immunity is unavailable as a matter of law on all claims brought against a defendant where a question of fact exists as to some fabrication of some evidence. <u>See</u> <u>Ricciuti</u>, 124 F.3d at 128-29 (affirming grant of summary judgment to defendants on qualified immunity grounds on false arrest claim while simultaneously holding that same defendants were not entitled to qualified immunity on claim that they fabricated evidence against plaintiffs). As noted herein, the conduct that gives rise to a Fourth Amendment malicious prosecution claim is the malicious initiation of a baseless prosecution against an accused, and thus a police officer is entitled to qualified immunity if, based on the undisputed facts available to the officer at the time the prosecution was initiated, it was objectively reasonable for the officer to believe he had probable cause to prosecute. <u>Escalera v. Lunn</u>, 361 F.3d 737, 743 (2d Cir. 2004) (holding that qualified immunity attaches if "it was objectively reasonable for the officer to believe that probable cause existed.").

In arguing that the Court must reach the opposite conclusion here, Morse quotes from <u>Sutton v. Duguid</u>, 05-cv-1215, 2007 WL 1456222 (E.D.N.Y May 16, 2007), in which the district court denied the defendants' motion for summary judgment on qualified immunity grounds because "if the plaintiff proves that [the detective] knowingly gave false testimony to the grand jury to secure the indictment, qualified immunity would not be available." <u>Id.</u> at *11. As with many § 1983 cases involving evidence fabrication, the false testimony in <u>Sutton</u> provided the probable cause for the prosecution. Thus, if the jury were to conclude that the detective gave false testimony, it would necessarily conclude that the defendants lacked probable cause to initiate criminal proceedings. Qualified immunity would indeed be unavailable in such circumstances, because when an officer fabricates probable cause to prosecute, it cannot be said that the officer had an objectively reasonable belief that probable cause existed. <u>See</u> <u>Scotto v.</u>

10

Almenas, 143 F.3d 105, 113 (2d Cir. 1998) ("[I]t would be objectively unreasonable for [an officer] to believe he had probable cause to arrest [the plaintiff] if [the officer] himself fabricated the grounds for arrest."); see also Blake v. Race, 487 F. Supp. 2d. 187 (E.D.N.Y. 2007) (holding that qualified immunity is unavailable where there is a disputed issue as to whether the police officer fabricated evidence *to establish probable cause*). That is not the case here, where the undisputed non-fabricated evidence available to Castillo and Flynn gave rise to an objectively reasonable belief that there was probable cause to prosecute.

For the reasons stated herein and in the Court's Summary Judgment Memorandum & Order, the Court adheres to its decision that Flynn and Castillo are immune from damages under § 1983 on the claim that they initiated a baseless prosecution against Morse in violation of his Fourth Amendment rights because it was objectively reasonable for them to believe they had probable cause to initiate the criminal prosecution against him, completely independent of any allegedly false evidence or testimony.[3] Morse's motion for reconsideration is denied.

### III. DEFENDANTS' MOTION FOR RECONSIDERATION

The defendants argue for the first time in this motion that Castillo and Fusto are entitled to absolute immunity on Morse's fair trial claim. The defendants' purported justification for failing to raise this argument before now is that the fabrication of evidence claim was not presented "in its current form" until after the original briefing and oral argument on the motion for summary judgment. The Court notes that this does not excuse the defendants' failure to raise this argument in their objections to the Magistrate Judge's Report and Recommendation on the

---

[3] Morse also argues that the Court overlooked significant factual disputes that preclude a finding that Castillo had arguable probable cause to initiate proceedings against Morse. Specifically, Morse argues that factual disputes exist as to whether Castillo disregarded over $100,000 in checks paid by Morse to the laboratories, and as to whether mistakes in Castillo's fraud analysis precluded Castillo from reasonably charging Morse with larceny in the first degree. The Court specifically considered these factual issues in ruling on the defendants' motion for summary judgment, and emphasized that "[w]hether the defendants in fact had probable cause to bring these proceedings is a close question," particularly in light of the unsophisticated invoice analysis performed by Castillo. However, having already fully considered these issues, and having concluded that on the totality of the facts available to the defendants there was at least arguable probable cause to commence criminal proceedings against Morse for Grand Larceny and Offering a False Instrument, the Court declines to revisit this holding.

11

summary judgment motion. Nevertheless, given the lack of clarity as to whether the allegations of evidence fabrication formed the basis of an independent claim for relief, or merely supported Morse's malicious prosecution claim, the Court will address the issue of absolute immunity in the first instance on reconsideration.

The question of whether Special Assistant Attorney General Fusto is entitled to absolute immunity on Morse's fair trial claim depends upon whether he was acting in his capacity as an "investigator" or "advocate" when he allegedly fabricated the billing documents that were ultimately presented to the grand jury. "A [prosecutor] plays more than one role in discharging the duties of the prosecutorial office: sometimes an administrative, sometimes an investigative, sometimes an advocate's role." Hill v. City of N.Y., 45 F.3d 653, 656 (2d Cir. 1995). "Prosecutors are absolutely immune from suit only when acting as advocates and when their conduct involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011); see Buckley v. Fitzsimmons, 509 U.S. 259 (1993) (holding that absolute immunity protects a prosecutor's conduct that is "intimately associated with the judicial phase of the criminal process"); Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (holding that when a prosecutor acts in his role as an advocate, "absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation"). The advocacy role of prosecutors

> encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution, activities in deciding not to do so, and conduct of plea bargaining negotiations.

Barrett v. U.S., 798 F.2d 565, 571-72 (2d Cir. 1986) (internal citations omitted).

Prosecutorial immunity extends so far as to protect from liability a prosecutor alleged to have conspired to present false evidence at a criminal trial. Dory, 25 F.3d at 83. "While absolute immunity may 'leave the genuinely wronged . . . without civil redress against a prosecutor whose malicious or dishonest action' has deprived them of their constitutional rights,"

Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting Imbler v. Pachtman, 424 U.S. 409, 427 (1976), the Supreme Court and Second Circuit have held that other considerations "require that the prosecutor be shielded from liability for damages with respect to acts performed within the scope of his duties when pursuing a criminal prosecution." Doe, 81 F.3d at 1209; Buckley, 509 U.S. at 270.

When a prosecutor acts as an investigator, he is accorded only the qualified immunity normally granted to police officers. Hill, 45 F.3d at 656. Although the line between the investigative and advocacy roles can be a difficult one to draw, the Supreme Court and Second Circuit have begun by drawing a line at the probable cause determination. "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Buckley, 509 U.S. at 273 (highlighting the "difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand"); see Hill, 45 F.3d at 661 ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts."); Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987) (holding that "the supervision of and interaction with law enforcement agencies in *acquiring* evidence which might be used in a prosecution," in contrast to organizing evidence for use in seeking an indictment, is of a police nature and not entitled to absolute immunity). Where the line blurs is after there is probable cause to arrest, as a prosecutor could still continue to perform investigative work. See Buckley, 509 U.S. at 274 n. 5 ("Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards.").

Fusto and Castillo argue that "[t]he preparation of 'Grand Jury Exhibit 7' and its presentation to the grand jury was unequivocally done as part of their role as prosecutors

13

presenting their case, and hence, part of the judicial process." (Def. Br. at 2.) [4] It is true that: "[i]t has been squarely held that the act of 'knowingly presenting evidence to . . . [the grand jury] . . . lie[s] at the very core of a prosecutor's role as an advocate.'" Felmine v. City of N.Y., No. 09-cv-3768, 2011 WL 4543268, at *27 (E.D.N.Y. Sept. 29, 2011) (quoting Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004)); see Hill, 45 F.3d at 661-62 ("Our recent holding in [Dory], which established that absolute prosecutorial immunity extends even to conspiracies to present false evidence at trial, compels the same result in the grand jury setting.").

In Hill, however, the Second Circuit distinguished the knowing presentation of false evidence to the grand jury from the deliberate fabrication of evidence. The defendant in Hill argued that he was entitled to absolute immunity on the plaintiff's claim that he had fabricated evidence because he prepared the allegedly false evidence specifically for presentation to the grand jury. Id. at 662. The Court rejected that argument, holding that if the evidence was manufactured in order to establish probable cause to arrest the plaintiff, then such conduct would be considered investigatory in nature and accorded only qualified immunity, regardless of whether use before the grand jury was contemplated at the time the evidence was manufactured. Id. The Court concluded that it was impossible to determine from the pleadings alone what function the defendant was engaged in when he manufactured the evidence, and thus declined to resolve the question of absolute immunity at the motion to dismiss stage. Id. Here too, Fusto and Castillo emphasize that they prepared the documents at issue specifically in contemplation of using them before the grand jury. However, Hill rejected the argument that this fact, alone, entitles a prosecutor to absolute immunity on a claim that he fabricated evidence.

---

[4] Under the functional test for immunity, prosecutorial immunity "extends to those performing functions closely associated with the process," including "individual employees who assist such an official and who act under that official's direction in performing functions closely tied to the judicial process." Hill, 45 F.3d at 660. Thus, if Castillo was acting under the direction of Fusto when the allegedly false evidence was prepared, they are entitled to the same type of immunity. See Doe v. Smith, 704 F. Supp. 177, 1185 (S.D.N.Y. 1988) ("A nonjudicial officer, such as an investigator for the district attorney's office, who undertakes ministerial actions intimately related to the judicial process at the express direction and control of the prosecutor, enjoys absolute immunity.").

The defendants argue that the facts of this case are "virtually indistinguishable" from those of Urrego v. United States, No. 00-cv-1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005), in which this Court applied Hill and held that an Assistant United States Attorney was entitled to absolute immunity on the claim that he "presented a false and fictitious set of facts to a grand jury so as to wrongfully obtain an indictment against plaintiff." The holding in Urrego, however, rested on the fact that, unlike in Hill, "the complaint contain[ed] no allegation that [the AUSA] *fabricated a piece of evidence* prior to the indictment." Id. at *3 (emphasis added). To the contrary, the claim in Urrego was purely one for "false presentation of evidence to the grand jury"—to which absolute immunity attaches. Id.

As in Hill, Morse's fair trial claim centers on allegations that Fusto and Castillo fabricated documentary evidence before any grand jury indictment was secured. After a review of the record, the Court finds that Castillo and Flynn have failed to meet their burden of establishing on undisputed facts that they were acting as "advocates" when they engaged in this challenged conduct. Hill, 45 F.3d at 661 ("The official who asserts absolute immunity from § 1983 liability shoulders the burden of establishing the existence of the immunity for the function in question."). The evidence establishes that Fusto supervised the investigation into Morse's billing practices from the beginning—long before there was probable cause to arrest—and that he met with Castillo on a weekly basis to discuss the investigation and to assist in the collection and analysis of the laboratory invoives that ultimately led to the decision to indict. Castillo testified that they worked as a team in building their case against Morse, and that Fusto instructed Castillo on what evidence to look for and what steps to take in the investigation. (Castillo Dep. 127-28, 227-28.)

A genuine issue of material fact remains as to whether the allegedly false billing documents were created during this investigatory phase or only in preparation for presentation of evidence to the grand jury after the decision to indict had already been made. Contrary to the

15

defendants' assertion, the deposition testimony of Castillo and Flynn does not establish that the documents in question could not have existed until *after* the grand jury proceedings had already started. To the contrary, Castillo testified that he was asked by Fusto to make a billing schedule for certain patients, but provided no testimony about when such a request was made, or during what phase of the investigation or prosecution of Morse the request occurred. Fusto testified that he believed the patients on the billing charts were those who were eventually "going to hopefully testify in the Grand Jury," indicating only that the documents were prepared at some point in advance of the grand jury presentation, but not when. (Fusto Dep. 105.) The evidence suggests that the documents may have been prepared solely for the grand jury proceedings but, as in Hill, the Court finds that without further factual development concerning the timing of the alleged fabrication in relation to the investigation of Morse's practices as a whole, it is unable to conclude as a matter of law that absolute immunity should be accorded to the Fusto and Castillo's conduct. Accordingly, the defendants' motion for reconsideration on absolute immunity grounds is denied.[5]

## IV. CONCLUSION

For the foregoing reasons, both parties' motions for reconsideration are denied. The parties are directed to inform the Court within fourteen days of the date of this order how they propose to proceed in this matter.

SO ORDERED.

Dated: Brooklyn, New York
August 2, 2012

                                                                              /s/
                                                      Carol Bagley Amon
                                                      Chief United States District Judge

---

[5] Because the Court rules that summary judgment is not warranted on absolute immunity grounds, it need not address Morse's argument that summary judgment is inappropriate because the defendants lost the original version of Grand Jury Exhibit 7.