UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DR. LEONARD MORSE,

              Plaintiff,

        -against-

ELIOT SPITZER et al.,

           Defendants.
-------------------------------------------------------------x
AMON, Chief United States District Judge:

NOT FOR PUBLICATION
**CORRECTED MEMORANDUM
& ORDER***
07-CV-4793 (CBA) (RML)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 29 2013 ★

BROOKLYN OFFICE

## BACKGROUND

This is a 42 U.S.C. § 1983 action arising from the criminal prosecution of the plaintiff,

Dr. Leonard Morse, for Medicaid fraud. Morse was indicted in 2006 by a grand jury for Grand

Larceny in the First Degree and Offering a False Instrument in the First Degree. He was

ultimately acquitted of all charges after a bench trial. Morse subsequently commenced this

action against former New York Attorney General Elliot Spitzer, Special Assistant Attorney

General John Fusto, who worked in the Medicaid Fraud Control Unit ("MFCU") and was the

prosecutor responsible for overseeing the investigation, grand jury proceedings, and prosecution

of Morse, Robert Flynn, the lead MCFU investigator on Morse's case, and Jose Castillo, an

MCFU audit-investigator also assigned to Morse's case. Morse alleges that the defendants

violated his civil rights by initiating and pursuing his arrest, indictment, and prosecution for

Medicaid fraud. His complaint asserts various claims for relief, under both federal and state law,

including claims for false arrest, malicious prosecution, and denial of the right to a fair trial due

to fabrication of evidence.

---

* This corrected M&O reflects a change correcting a typographical error in the Court's original M&O issued
September 30, 2011 (DE 67). At page 11, paragraph 1, the beginning of the second sentence has been changed from
"If not" to "If so". No change has been made to the substance of the opinion.

The defendants moved for partial summary judgment, and the Court referred the motion to the Honorable Robert M. Levy, U.S. Magistrate Judge, for a Report and Recommendation (R & R). Magistrate Judge Levy issued an R & R on March 15, 2011, recommending that the Court deny the defendants' motion for summary judgment on Morse's claims for false arrest and malicious prosecution, but recommending that the Court grant summary judgment on the balance of Morse's claims, including his fair trial claim based on fabrication of evidence.

The defendants have filed objections to the portion of the R & R that recommends denying summary judgment on Morse's claims for false arrest and malicious prosecution. Morse has not filed objections to the R & R. However, after Magistrate Judge Levy issued the R & R, Morse submitted an amended complaint that asserts a modified fair trial claim premised on allegations of evidence fabrication that were included in the original complaint, but that did not expressly form the basis of the original fair trial claim. The defendants stipulated to the filing of an amended complaint, but took the position at oral argument that they are nonetheless entitled to summary judgment on the amended claim. Because it was not before the Magistrate Judge, the R & R does not address whether defendants are entitled to summary judgment on the amended claim for denial of the right to a fair trial due to fabrication of evidence (which the Court refers to herein as Morse's "fabrication of evidence" claim).

## STANDARD OF REVIEW

The Court assumes familiarity with the facts and procedural posture of this case, as set forth in the R & R. (R & R at pp. 2-7.) The Court reviews *de novo* those portions of the R & R to which a party has objected, and reviews those portions not objected to for clear error. Larocco v. Jackson, No. 10-CV-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1).

## DISCUSSION

For the reasons that follow, the Court finds that the defendants' motion for summary judgment should be denied on Morse's amended claim for denial of the right to fair trial based upon the fabrication of evidence. However, the Court disagrees with the R & R's recommendation that the defendants' motion for summary judgment should be denied as to Morse's claims for malicious prosecution and false arrest, and the Court grants the defendants' motion for summary judgment as to those claims. Finally, as to the remaining claims addressed by the R & R, to which no party objects, the Court adopts the R & R and grants the defendants' motion for summary judgment as to those claims.

### I.    Nature of the claims

Because the basis of Morse's claims for malicious prosecution and fabrication of evidence have evolved throughout the course of this litigation, including in the amended complaint, it is helpful to clarify the defendants against whom each claim is asserted, and on what factual basis.

Morse's original complaint, which is not a model of clarity, alleged that the defendants maliciously prosecuted Morse on eleven counts of filing false instruments and one count of grand larceny. The central allegations in support of the original malicious prosecution claim were that Special Assistant Attorney General John Fusto, MCFU Senior Special Investigator Robert Flynn, and MCFU Auditor-Investigator Jose Castillo fabricated documentary evidence—namely, patient billing summaries that suggested evidence of fraud that did not occur—for use at grand jury proceedings, and that Flynn and Castillo perjured themselves before the grand jury in order to secure an indictment. (Compl. ¶¶ 117–34.)

3

The original complaint separately alleged a claim for violation of Morse's Fifth and Fourteenth Amendment right to a fair trial due to fabrication of evidence, which the R & R reasonably concluded was premised on allegations that Flynn, Castillo, Fusto, and other defendants, together with the proprietor of the laboratory that processed Morse's prosthetics work, fabricated false laboratory invoices to be introduced at trial in support of the grand larceny claim. (Compl. ¶¶ 135-143.)

The R & R recommended denying summary judgment on the malicious prosecution claim, stating that "whether the exhibits and testimony presented to the grand jury were deliberately misleading or constituted conduct taken in bad faith is an issue of fact sufficient to defeat summary judgment." (Id. at 26.) The R & R recommended granting summary judgment on the fabrication of evidence claim, concluding that, as a matter of law, the claim could not lie because Morse had not been convicted at trial, or, alternatively, there was no evidence from which a reasonable jury could conclude that the defendants had manufactured the laboratory invoices. (Id. at 27–28.)

Morse moved for reconsideration of Magistrate Judge Levy's recommended dismissal of his fabrication of evidence claim, arguing that Second Circuit law permits such a claim even where the plaintiff was not convicted of the crime charged. He also argued that his claim was not limited to the alleged fabrication of the laboratory invoices, conceding that it "may well be correct" that no reasonable jury could find those invoices to have been fabricated by the defendants. Magistrate Judge Levy denied Morse's motion for reconsideration, explaining that he had reasonably interpreted the claim to be premised on the laboratory invoices. He conceded, however, that Morse's acquittal did not defeat his fabrication of evidence claim under Second Circuit law.

The amended complaint, filed after the R & R was issued, differs from the original complaint in that it clarifies the defendants against whom each claim is asserted, and provides a distinct factual basis for each claim. The amended complaint asserts a Fourth Amendment malicious prosecution claim against Flynn and Castillo, on the grounds that they initiated criminal proceedings against Morse without probable cause, and gave false and misleading testimony before the grand jury for the purpose of securing an indictment. (2d Am. Compl. ¶¶ 115–131.) The complaint separately asserts a Fifth/Fourteenth Amendment claim for denial of the right to a fair trial due to fabrication of evidence against Castillo and Fusto, alleging that they fabricated and altered patient billing summaries for use at the grand jury proceedings (including Grand Jury Exhibit 7) to suggest evidence of Medicaid fraud that did not occur. (Id. ¶¶ 132–42.)

Finally, also before the Court is the defendants' motion for summary judgment on Morse's false arrest claim. Both the original and amended complaint assert this claim against Flynn, Castillo, and Fusto, alleging that they caused Morse to be arrested and prosecuted without probable cause.

The Court addresses each of Morse's claims in turn.

## II.    Fair trial/fabrication of evidence claim

The Second Circuit has held that "[i]t is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir.2000); see Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable

5

action is redressable in an action for damages under 42 U.S.C. § 1983."). While cases in this

Circuit are inconsistent as to whether this claim arises under the Sixth Amendment right to a fair

and speedy trial, or under the due process clauses of the Fifth and Fourteenth Amendments[1], the

Second Circuit's opinion in Zahrey makes clear that a § 1983 claim for damages based on

fabrication of evidence lies where an officer's post-arrest fabrication of evidence results in a

restraint on the plaintiff's liberty. 221 F.3d at 350 (holding that alleged due process violation

must result in liberty deprivation). In addition, the Second Circuit's decision in Ricciuti makes

plain that, unlike a malicious prosecution claim, probable cause is not a defense to this type of

claim. 124 F.3d at 130 ("To hold that police officers, having lawfully arrested a suspect, are then

free to fabricate false confessions at will, would make a mockery of the notion that Americans

enjoy the protection of due process of the law and fundamental justice.").

Morse suffered a deprivation of liberty as a result of the grand jury indictment. He was

required to make multiple court appearances over the course of the fifteen months following the

indictment, and then defend himself at trial against the criminal charges brought against him.

See Ricciuti, 124 F.3d at 126-27 (allowing fabrication of evidence claim to proceed where, as the

result of the false confession, the plaintiff was arraigned and required to appear in criminal court

on seven occasions over the course of a two month period); Genia v. New York State Troopers,

No. 03-cv-0870, 2007 WL 869594, at *14 (E.D.N.Y. March 20, 2007) (holding that there was a

---

[1]  Zahrey and Ricciuti both involved allegations that government officers fabricated evidence that was subsequently used by prosecutors to bring charges or secure an indictment against the plaintiff. In Zahrey, the Second Circuit characterized this fabrication of evidence claim as "an example of a classic constitutional violation: the deprivation of [] liberty without due process of law." 221 F.3d at 348. In Ricciuti, the Second Circuit characterized this fabrication of evidence claim as one involving the "accused's constitutional right to a fair trial," without specifying the constitutional amendment under which the right arises. Id. 124 F.3d at 130. Cases applying Ricciuti, however, have characterized the right as one arising under the Sixth Amendment. See Mitchell v. Home, 377 F. Supp. 2d 361, 373 (S.D.N.Y. 2005) (recognizing §1983 Sixth Amendment fair trial claim premised on allegations of fabrication of evidence); Brandon v. City of New York, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (same). Regardless of which constitutional amendment prohibits government officers from fabricating evidence post-arrest, these cases clearly establish that the harm caused by such conduct is redressable through a §1983 action for damages.

deprivation of liberty where the plaintiff was required to "make multiple court appearances after the arraignment, up to and including the criminal trial"); Sassower v. City of White Plains, 992 F. Supp. 652, 656 (S.D.N.Y. 1998) (holding that allegations that the plaintiff was required to appear in court on three occasions raised "genuine issue of fact as to the deprivation of liberty element" of the plaintiff's malicious prosecution claim). Thus, if a reasonable jury could find that Fusto and Castillo fabricated evidence for use at the grand jury proceedings, and that such evidence was material in securing the indictment that resulted in this deprivation of Morse's liberty, then Fusto and Castillo are not entitled to summary judgment on Morse's fabrication of evidence claim.

The Court agrees with and adopts the R & R's finding that Morse has presented evidence sufficient to raise a genuine issue of fact concerning whether Fusto and Castillo intentionally fabricated and/or altered billing summaries for use before the grand jury, including Grand Jury Exhibit 7. (R & R at pp. 22-24.) The Court notes that Magistrate Judge Levy analyzed this factual issue not in the context of Morse's original fabrication of evidence claim, which was not based on the defendants' alleged fabrication of the billing documents used in the grand jury proceedings, but in the portion of the R & R addressing the original malicious prosecution claim. However, the analysis is the same and we therefore adopt it here.

In addition, a reasonable jury could find that the fabricated evidence was material in securing the grand jury indictment resulting in the restraint on Morse's liberty. The transcript of the grand jury proceeding reveals that expert witness Linda De Luca testified at some length about how Grand Jury Exhibit 7 showed Morse billing for the same repairs and replacements to the same prosthetic more than once per day, and on more than one occasion, which she testified was highly unusual. (G.J. Tr. Mar. 8, 2006 at 10–17.) This testimony obviously impressed the

grand jurors: they asked the laboratory proprietors who later testified whether they had ever had to repair the same prosthetic more than once in the same day. (G.J. Tr. Mar. 9, 2006 at 18–21, 31.) Each proprietor testified that that would be unusual. Moreover, even though the $1 million fraud claim depended largely on Castillo's testimony about his invoice analysis, that analysis was rather abstract and a reasonable jury could find that the specific billing statements likely influenced the grand jury proceedings.[2]

Accordingly, the Court finds that defendants Fusto and Castillo are not entitled to summary judgment on Morse's fabrication of evidence claim.

## III.  Malicious prosecution

As the R & R explained, a plaintiff seeking to prevail on a malicious prosecution claim must "show that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). This cause of action is grounded in the Fourth Amendment right to be free from unreasonable searches or seizures, and the R & R correctly found that the existence of probable cause is therefore a defense to this claim. Cornejo v. Bell, 592 F.3d 121, 129 (2d Cir. 2010). In a malicious prosecution case, "the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced." Davis v. City of New York, 373 F. Supp. 2d 322, 333 (S.D.N.Y. 2005) (internal quotation marks omitted); Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) (noting that relevant probable cause for malicious prosecution claim is probable cause "for commencing the proceedings").

---

[2] The Court cannot endorse the defendants' position, offered at oral argument, that the decision to omit from the challenged exhibit information that would have shown work not to be redundant was an exercise of "advocacy" similar to the "advocacy" in which counsel was engaging at oral argument.

The parties do not dispute that the grand jury indictment in this case creates a presumption of probable cause. Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010). However, this presumption is rebutted when there is evidence that "the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Id. at 162.

If the presumption of probable cause is rebutted, a malicious prosecution claim is still subject to the defense that commencement of the criminal proceeding was supported by probable cause, but the defendants must prove that they had probable cause without the benefit of the presumption. See id at 163 (finding that evidence supported both the conclusion "that the presumption of probable cause created by the grand jury indictment was rebutted and that probable cause was lacking"); Savino v. City of New York, 168 F. Supp. 2d 172, 178 (S.D.N.Y. 2001), rev'd on other grounds, 331 F.3d 63 (2d Cir. 2003) ("In the absence of the presumption[, which was rebutted by evidence that defendants withheld exculpatory evidence from the grand jury], there are genuine issues of fact with respect to both probable cause and qualified immunity.").

The Court agrees with the R & R's findings, subject to this Court's differing analysis in certain respect, as set forth below, that a reasonable jury could conclude that the grand jury indictment was procured by false testimony and fabricated evidence, and thus the presumption of probable cause is rebutted. However, the Court disagrees with the R & R's conclusion that genuine issues of material fact remain as to whether Flynn and Castillo had probable cause to commence criminal proceedings against Morse. For the reasons discussed below, the Court finds that the undisputed facts establish as a matter of law that probable cause existed at the time of the grand jury proceedings.

## A. Presumption of probable cause

As discussed above, we agree with and adopt the R & R's finding that a reasonable jury could find that Fusto and Castillo fabricated evidence that was used to secure the grand jury indictment in this case, namely Grand Jury Exhibit 7 and other billing summaries.

In addition, taking all disputed facts in the light most favorable to Morse, the Court concludes that a reasonable jury could also find that Flynn lied during the grand jury proceedings when he testified that Morse told him that he personally "examines" and "signs off" on "all the charts" at the dental office. (G.J. Tr. Mar. 9, 2006 at 9.) Morse unequivocally denies ever making such a statement or "anything even close to that statement." (Morse Dec. ¶ 78.) Indeed, the defendants concede in their objections to the R & R that there may be a dispute concerning what Morse told Flynn. Moreover, Flynn admitted that he never specifically asked Morse whether, before he submitted claims to Medicaid, he reviewed his employee's (Dr. Ketover) bills or patient charts. (Flynn Dep. at 35–36.) Based on this evidence, a jury could reasonably believe that Flynn lied in order to make it appear that Morse had intentionally submitted invoices that he had reviewed and knew to be false.

Morse has also presented sufficient evidence to support a finding that these instances of fraud were instrumental in procuring the grand jury indictment. As discussed above, a reasonable jury could find that the fabricated billing documents gave the grand jury the impression that Morse repeatedly billed Medicaid for the same procedure. So too could a reasonable jury find that Flynn's testimony gave the grand jury the impression that Flynn intentionally submitted invoices that he knew to be false.

Because Morse has presented evidence based upon which a reasonable jury could find

that (1) Fusto and Castillo fabricated evidence that was used before the grand jury; (2) Flynn gave material false testimony at the grand jury proceedings; and (3) these instances of fraud were instrumental in procuring the grand jury indictment, Castillo and Flynn are not entitled to a presumption of probable cause on Morse's malicious prosecution claim.

## B. Probable cause

Without the presumption of probable cause, the Court still must consider whether Flynn and Castillo had probable cause to commence criminal proceedings against Morse. If so, a claim for malicious prosecution cannot go forward. Moreover, "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d. Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). The defendants argue that they are entitled to qualified immunity on Morse's claim for malicious prosecution because they had arguable cause to commence proceedings against him.

The R & R recommends that the Court deny summary judgment on this claim on the grounds that genuine issues of material fact remain as to whether the defendants had arguable probable cause. (R & R at pp. 13-22.) However, "[i]t has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007); see Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the

pertinent events and the knowledge of the officers."). In this case, while the parties vigorously dispute the significance of the facts that were known to Flynn and Castillo at the time they initiated criminal proceedings against Morse, there is no dispute as to what facts the defendants actually relied upon to establish probable cause. The record establishes that defendants relied primarily on three sources of information.

First, the defendants had a basis to believe that Morse failed to keep any records of the prescriptions he wrote for prosthetic work from 2000-2002, a fact that they deemed incriminatory at the time of their investigation in light of the fact that Morse submitted roughly $1.9 million in claims to Medicaid for this type of work during the time period at issue. (Castillo Dec. ¶¶ 3-4; Fusto Dec. ¶ 5.) The defendants also knew that Morse's failure to keep records for more than one year, while not in violation of state law, was in violation of the Medicaid regulations. See 18 N.Y.C.R.R. § 504.3(a).

Second, in light of the missing records, the defendants subpoenaed records from 2000-2002 from two laboratories that Morse used to perform his prosthetic work, Nu-Life Labs and Design Dental Labs. The undisputed facts show that these records were flawed; Fusto described them as "sloppy," "incomplete," "informal," "handwritten," and "lacking detail." (Fusto Dec. ¶¶ 8-26.) They also did not contain sufficient information to allow the investigators to clearly identify which patients were Medicaid recipients. Nevertheless, Castillo used these records to calculate a "ceiling" for the amount of money Morse could have legitimately billed to Medicaid for the services indicated on the available invoices. He did so essentially by calculating the "maximum Medicaid allowance" for each service (ignoring invoices that he could determine were for patients that were not Medicaid recipients). He then compared that ceiling to the actual amount of Medicaid claims Morse submitted during for the 2000-2002 period, and determined

there was a discrepancy of over $1 million. (Castillo Dec. ¶ 14.)

Third, Flynn conducted telephone interviews with twelve patients who had received dental work at Morse's office. (Flynn Dep. Tr. April 30, 2009 at 104.) Eight of these patients ultimately testified at the grand jury proceedings that they did not receive the dental services for which Morse submitted claims to Medicaid.

In analyzing whether it was objectively reasonable for the defendants to commence criminal proceedings against Morse based on these facts, both parties make much of the fact that Nu-Life and Design Dental did not have any invoices for work submitted by Morse for many of the months during the relevant time period. Morse argues that the only reasonable inference the defendants could have drawn was that these records were simply "missing," and that Castillo should have assumed that Morse had submitted at least some work to the laboratories during those months. He argues that a reasonable person would have factored the missing months into the invoice analysis, and that Castillo's failure to do so obviously—and significantly— underestimated the amount Morse legitimately could have claimed from Medicaid. The defendants, on the other hand, argue that it was objectively reasonable for Castillo to conclude during the investigation that the laboratories produced all of the invoices that had ever existed during the requested time period, and thus that invoices for the months in question did not exist, and Morse had simply not submitted work to those laboratories during those time periods. Moreover, it was also a reasonable inference that the use of such unprofessional and disorganized laboratories lent further support to the fraudulent nature of Morse's practice.

Whether the defendants in fact had probable cause to bring these proceedings is a close question. Morse has presented evidence to show that Castillo's analysis of the laboratory invoices was flawed and over-simplified. The Court agrees that the investigatory methods

13

employed in this case, particularly Castillo's invoice analysis, were unsophisticated. Indeed, the quality of the investigation was called into question when Justice Walsh held that the Design Dental records were inadmissible because they were untrustworthy, and ultimately acquitted Morse on all accounts.

However, the standard for probable cause "is not as demanding as the standard for criminal conviction." Coleman v. City of New York, 49 Fed. Appx. 342, 345 (2d Cir. 2002); see United States v. Webb, 623 F.2d 758, 762 (2d Cir. 1980) (emphasizing that "while the rule of probable cause does impose a requirement on police to act with more than mere suspicion of wrongdoing, the rule also gives police a permit to act with less than absolute certainty of guilt"). It would have been prudent and perhaps better practice for the defendants to have conducted a more in depth investigation before bringing Medicaid fraud charges against Morse, or to hire an expert to conduct a more complete analysis of all available records. But the Court cannot say that Castillo's judgment in relying on these invoices, and in particular his assumption that there were no invoices for the missing months, "was so flawed that no reasonable officer would have made a similar choice." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995); see Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]rguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law.") (internal quotation marks omitted). Although Castillo could have credited Morse's claim that he sent out laboratory invoices for every month from the years 2000 to 2002, and thus that the "missing" laboratory invoices once existed, Castillo was under no obligation to do so in light of Morse's own lack of records substantiating this claim. See Ricciuti, 124 F.3d at 128 (holding that an officer "would have been entitled to believe [the

plaintiff's] version of events . . . [but] was not required to do so").

Moreover, "[t]he probable cause inquiry contemplates the totality of the circumstances." Seitz v. DeQuarto, 777 F. Supp. 2d 492, 502 (S.D.N.Y. 2011)). While Castillo's invoice analysis may have been flawed, other evidence did factor into the defendants' decision to commence criminal proceedings. It was objectively reasonable for the defendants to conclude that Morse's failure to keep proper records for the bulk of his Medicaid prescriptions was incriminatory, especially given the volume of his prosthetics practice and the Medicaid record-keeping requirements. Perhaps most importantly, the documents that were available at the time of the investigation simply failed to substantiate the nearly $2 million in claims that Morse submitted to Medicaid. Indeed, before the grand jury proceedings, Morse was never able to produce any records independent of patients' charts to show that he actually performed the procedures for which he billed Medicaid during the relevant time period. (Fusto Dec. ¶ 8.) In addition, regardless of whether trial testimony later revealed that the patients who testified at the grand jury proceedings were confused at the time they were initially interviewed, the focus of the probable cause analysis is what the defendants knew at the time they commenced the proceedings, and nothing in the record indicates that Fusto, Castillo, or Flynn had any reason to believe the grand jury witnesses were not testifying truthfully or accurately when they said they did not receive the prosthetic work for which Morse has submitted claims to Medicaid. Seitz, 777 F. Supp. 2d at 502.

On these facts, the Court finds that the defendants had at least "arguable probable cause" to commence criminal proceedings against Morse for Grand Larceny and Offering a False Instrument. Accordingly, defendants Castillo and Flynn are entitled to qualified immunity on Morse's claim for malicious prosecution.

## IV.    False Arrest

For the same reasons that the defendants had arguable probable cause to commence

criminal proceedings against Morse, the Court finds that they had arguable probable cause to

arrest him.  Accordingly, the defendants are entitled to summary judgment on Morse's claim for

false arrest.[3]

## V.    Remaining Claims

No party has objected to Magistrate Judge Levy's reasoning and conclusions with respect

to the remaining claims.  The Court adopts the R & R.

## CONCLUSION

For the reasons stated, the defendants' motion for summary judgment is granted with

respect to all claims except Morse's fabrication of evidence claims against Fusto and Castillo. [4]

The parties are directed to inform the Court within fourteen days of the date of this order how

they propose to proceed in this matter.

SO ORDERED.

Dated: Brooklyn, New York
      January 29, 2013

s/Carol Bagley  Amon
Carol Bagley Amon
Chief United States District Judge

---

[3]  Although the defendants have not pressed this argument, the Court also believes that the false arrest claim fails in
this case because only arrests undertaken without legal process can give rise to claims for false arrest.  See
Broughton v. State of New York, 37 N.Y.2d 451, 458 (N.Y. 1975) (holding that only cause of action for malicious
prosecution, not false arrest, can lie where an arrest has been effected by a warrant ); Selinger v. City of New York,
No. 08 Civ. 2096, 2010 WL 4616138, at *3 (S.D.N.Y. Nov. 5, 2010) ("'When an [allegedly] unlawful arrest has
been effected by a warrant [the] appropriate form of action is malicious prosecution [as opposed to false arrest].'")
(quoting Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 117 (2d Cir. 1995)).

[4] The defendants did not move for summary judgment on three claims asserted by Morse against defendants Spitzer
and Fusto, which are based on extrajudicial statements allegedly made to the press about Morse.  Accordingly, those
claims still stand.